PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2522
_____

WILLIAM HAYES

v.

WAL-MART STORES, INC., doing business as
SAM'S CLUB; ABC CORPORATIONS I-V (fictitious
names)

Wal-Mart Stores, Inc., doing business as SAM'S CLUB,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 1-10-cv-00460
(Honorable Jerome B. Simandle)
_____

Argued: January 8, 2013

Before:  SCIRICA, AMBRO and FUENTES, *Circuit Judges*.

(Filed: August 2, 2013)

Charles B. Casper, Esq.
John G. Papianou, Esq. [ARGUED]
Paul H. Zoubek, Esq.
Montgomery, McCracken, Walker & Rhoads
123 South Broad Street
28th Floor
Philadelphia, PA 19109
     *Counsel for Appellant*

Daniel Lapinski, Esq. [ARGUED]
Wilentz, Goldman & Spitzer
90 Woodbridge Center Drive
8th Floor
Woodbridge, NJ 07095

James C. Shah, Esq.
Shepherd, Finikelman, Miller & Shah
475 White Horse Pike
Collingswood, NJ 08107

     *Counsel for Appellee*

————————————

OPINION OF THE COURT
————————————

SCIRICA, *Circuit Judge*.


     This is an interlocutory appeal under Fed. R. Civ. P. 23(f). Plaintiff Hayes brought a putative class action against

Wal-Mart, asserting claims for violation of the New Jersey Consumer Fraud Act, breach of contract, and unjust enrichment in connection with Wal-Mart's sale of extended warranty plans through Sam's Club retail stores. Defendant Wal-Mart contests the trial court's order granting plaintiff Hayes' motion for class certification. Post certification, we decided *Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012), which thoroughly explored Rule 23's class definition, ascertainability, and numerosity requirements. Because those requirements are key issues in this appeal, we will vacate the certification order and remand in light of *Marcus*.

## I.

Sam's Club is a members-only retail warehouse owned and operated by Wal-Mart. Each of Sam's Club's stores has a section for certain clearance items, called "as-is" items. Items may be designated for the as-is section for a variety of reasons. They may be: (1) display items, which were removed from their packaging to show to members; (2) items that were purchased and then returned; (3) items that are brand-new but that Sam's Club wants to clear out, called "last one" items; or (4) items that were damaged in-Club. Each item in the as-is section is marked with an orange sticker that states the product is being sold as-is.

When a person desires to purchase an as-is item, a Sam's Club cashier at the point of sale scans the item. The original price appears on the point of sale system, and the cashier must perform a "price override" by manually entering the discounted price. Sam's Club's software records the fact that a price override was performed, but does not include the

3

reason for the override. Significantly, price overrides can be made for reasons other than the fact that an item was designated as-is, including when a member requests a discount because the item is sold for less elsewhere, or when a member purchases an item and later finds it on sale. Separately, each of the Sam's Club stores keeps a handwritten log of items that are marked as-is and the reason for doing so. It is notable that the log does not track the sale of those items.

Sam's Club contracted with National Electronics Warranty Corporation ("NEW") to sell extended warranty products called Service Plans for various items sold in the store. The Service Plans state NEW will not cover "products sold 'as-is' including but not limited to floor models (unless covered by a full manufacturer's warranty on your date of purchase) and demonstration models." As indicated, Service Plans will cover as-is items that still have their manufacturers' warranties, including "last one" items that are sealed and brand-new, as well as some display items.[1]

---

[1] Plaintiff contends no as-is items are covered by manufacturers' warranties at the time of sale. Br. on Behalf of Appellee William Hayes at 6. The trial court did not make explicit findings as to whether or which as-is items were covered by manufacturers' warranties at the time they were sold. But the court's decision to exclude as-is items covered by manufacturers' warranties from the class definition may suggest that it concluded such items do exist. The record appears to support that conclusion. *See* J.A. vol. II, A69 ¶ 16 (Patulak Decl.) ("'[L]ast one' items, particularly electronic items, are often brand new, sealed items, that are marked as-is to clear out remaining inventory. That the item was sold as-is does nothing to void any manufacturer's warranty."); *id.* at

4

Plaintiff Hayes made two separate purchases of as-is items. On each occasion, a Sam's Club employee offered and Hayes agreed to purchase a Service Plan for the as-is item. At the time of his purchases, Hayes contends he was not told whether the Service Plan would actually cover his as-is item. On August 7, 2008, Hayes purchased an as-is power washer for $100 along with a Service Plan that cost $5.26. There is no evidence that Hayes was offered a refund for the Service Plan or that he had problems with the product and sought to have it serviced. On July 1, 2009, Hayes purchased an as-is television set for $350 along with a Service Plan that cost $39.85. After taking the television set home and discovering it was missing certain pieces, he returned to the store. The store eventually provided Hayes with a manual and remote. A store employee also informed him that Sam's Club should not have sold him the Service Plan because it did not cover the television and offered to refund him the cost of the Service Plan. Hayes declined.

On January 26, 2010, Hayes filed suit on behalf of himself and all other persons who purchased a Service Plan for an as-is product from Sam's Clubs in New Jersey since January 11, 2004. He asserted a violation of the New Jersey Consumer Fraud Act, breach of contract, and unjust enrichment. The trial court certified the following Rule 23(b)(3) class:

All consumers who, from January 26, 2004 to

---

A68, ¶ 7 (Patulak Decl.) ("Display items are sometimes covered by their manufacturers' warranty. It depends on the terms and conditions of the manufacturer's warranty.").

the present, purchased from Sam's Clubs in the State of New Jersey, a Sam's Club Service Plan to cover as-is products. Excluded from the Class are consumers whose as-is product was covered by a full manufacturer's warranty, was a last-one item, consumers who obtained service on their product, and consumers who have previously been reimbursed for the cost of the Service Plan.

The trial court found the class, under this amended definition, fulfilled the requirements of Fed. R. Civ. P. 23. Specifically, the court found the class was ascertainable because members could be determined with reference to objective criteria. The court found the class was sufficiently numerous because Sam's Club had records of 3,500 member transactions during the class period that included both a price override and the purchase of a Service Plan; the court reasoned that if even 5% of those price overrides were for as-is items that were ineligible for Service Plan protection, the class would be sufficiently numerous. The court found that common issues predominated over individualized issues because the essential elements of each claim were susceptible to common proof. In addition, the court found Hayes' purchase of a Service Plan for the as-is power washer was a proper basis for class certification but not his purchase of a Service Plan for the as-is television set, since the Service Plan for the television set was honored when Sam's Club replaced the missing remote. We granted Wal-Mart's interlocutory appeal under Fed. R. Civ. P. 23(f).

6

## II.[2]

"[Class] certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citations omitted) (quoting *Gen. Tel. Co. of Sw. v. Falcon*,

[2] We have appellate jurisdiction under 28 U.S.C. § 1292(e) and Fed. R. Civ. P. 23(f). Plaintiff asserted jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Neither party contested subject matter jurisdiction before the trial court. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." (citation omitted)). Although we cannot help but note the relatively small value of plaintiff's purported loss in conjunction with the limited number of putative class members, we decline to reach the issue of jurisdiction here. The Supreme Court has instructed that it is appropriate to reach class certification issues first, if they are dispositive, because their resolution is "logically antecedent to the existence of any Article III issues." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997). Moreover, the record on appeal is insufficient for us to determine that plaintiff cannot meet the $5,000,000 amount-in-controversy requirement to a legal certainty. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). If the class is permitted to go forward on remand, CAFA jurisdiction should be explored by the district court.

457 U.S. 147, 161 (1982)). "Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence," *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008), and the burden of proof rests on the movant, *id.* at 316 n.14. "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." *Id.* at 318.

"We review a class certification order for abuse of discretion, which occurs if the district court's decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Id.* at 312 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 165 (3d Cir. 2001)). We review whether an incorrect legal standard has been used *de novo*. *Id.*

## III.

Wal-Mart asserts the trial court erred in certifying the class because plaintiff failed to meet his burden of showing (A) there is a reliable and administratively feasible method for ascertaining the class, (B) the class is sufficiently numerous to qualify for class action treatment, and (C) issues common to the class predominate over issues affecting only individual members. In part (D), we consider *sua sponte* whether Hayes has constitutional standing to bring suit in this case.

## A.

The trial court found the class was ascertainable because the amended definition specifies "'a particular group that was harmed during a particular time frame, in a particular

8

location, in a particular way,'" and uses objective criteria. *Hayes v. Wal-Mart*, 281 F.R.D. 203, 210 (D.N.J. 2012) (quoting *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 455 (D.N.J. 2009)). The court explained that although plaintiff need not "'prove that class members have been injured for purposes of defining the [class],'" *id.* (quoting *Rowe*, 262 F.R.D. at 455), the amended definition nonetheless excludes those individuals who have not suffered comparable harm.

Wal-Mart asserts the trial court erred in failing to consider whether it is administratively feasible to ascertain the class. Wal-Mart argues the trial court will have to engage in impractical mini-trials to determine if putative class members fall within the class definition.

It is plaintiff's burden to show that a class action is a proper vehicle for this lawsuit. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) ("The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." (citations and quotation marks omitted)). As "an essential prerequisite" to class certification, *Marcus*, 687 F.3d at 592, plaintiff must show by a preponderance of the evidence that the class is ascertainable. *See In re Hydrogen Peroxide*, 552 F.3d at 320 ("Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence."). In *Marcus*, we explained that ascertainability is important because it "eliminates serious administrative burdens . . . by insisting on the easy identification of class members"; allows for the best notice

9

practicable, and thereby protects absent class members; and protects defendants by clearly identifying the individuals to be bound by the final judgment. 687 F.3d at 593 (quotation marks omitted).

*Marcus* made clear that ascertainability entails two important elements. First, the class must be defined with reference to objective criteria. *Id.* Second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. *Id.* at 593-94. We explained that "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* at 593; *see also* William B. Rubenstein, *Newberg on Class Actions* § 3:3 (5th ed. 2011) ("Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry."). We noted that other courts have gone so far as to hold "that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails." *Marcus*, 687 F.3d at 593.

The plaintiffs in *Marcus* sued BMW and Bridgestone for selling allegedly defective run-flat tires (RFTs). *Id.* at 588. The class definition sought to capture owners and lessees who purchased or leased new BMWs with original-equipment Bridgestone RFTs from BMW dealerships in New Jersey and whose tires had gone flat and been replaced. *Id.* at 592. We found the proposed class raised "serious ascertainability issues." *Id.* at 593. In particular, lease and purchase records from BMW dealerships were over-inclusive because they did not document the brand of tire on each car leased or sold. *Id.*

10

And not all owners and lessees took their vehicles back to a BMW dealer to have their tires replaced—hence repair records were under-inclusive. *Id.* at 594. Remanding the case to the district court, we said:

> If Marcus attempts to certify a class on remand, the District Court—adjusting the class definition as needed—must resolve the critical issue of whether the defendants' records can ascertain class members and, if not, whether there is a reliable, administratively feasible alternative. We caution, however, against approving a method that would amount to no more than ascertaining by potential class members' say so. For example, simply having potential class members submit affidavits that their Bridgestone RFTs have gone flat and been replaced may not be "proper or just." . . . Forcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications.

*Id.* (citation omitted) (quoting *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1090 (N.D. Cal. 2011)).

Because the able trial court here did not have the benefit of *Marcus*'s guidance, it did not consider whether it would be administratively feasible to ascertain class members. In discussing numerosity, however, the court noted that Sam's Club had no method for determining how many of the 3,500 price-override transactions that took place during

11

the class period were for as-is items. The court did not see this as a barrier to class certification, reasoning that plaintiff should not be hindered from bringing a class action because defendant lacked certain records.

But the nature or thoroughness of a defendant's recordkeeping does not alter the plaintiff's burden to fulfill Rule 23's requirements. Nor has plaintiff cited any statutory or regulatory authority obligating Wal-Mart to create and maintain a particular set of records. *Cf. In re Hydrogen Peroxide*, 552 F.3d at 310 (explaining that even a district court's broad discretion to control proceedings "does not soften the rule: a class may not be certified without a finding that each Rule 23 requirement is met"). Rule 23's requirements that the class be administratively feasible to ascertain and sufficiently numerous to warrant class action treatment cannot be relaxed or adjusted on the basis of Hayes' assertion that Wal-Mart's records are of no help to him.

Given the trial court's finding that Wal-Mart lacks records that are necessary to ascertain the class, to be successful on remand, plaintiff must offer some reliable and administratively feasible alternative that would permit the court to determine: (1) whether a Sam's Club member purchased a Service Plan for an as-is item, (2) whether the as-is item was a "last one" item or otherwise came with a full manufacturer's warranty, and (3) whether the member nonetheless received service on the as-is item or a refund of the cost of the Service Plan.[3] *Cf. id.* at 319 (explaining that, in

---

[3] Although these inquiries overlap with the merits, each of these inquiries addresses an element of the class definition—

class action litigation, "'[a] critical need is to determine how the case will be tried'" (quoting Fed. R. Civ. P. 23 advisory committee's note, 2003 Amendments)). Based on the existing record, plaintiff has not fulfilled this burden. But we will nonetheless remand because plaintiff did not have the benefit of our decision in *Marcus* when he submitted evidence of the class's ascertainability.

To summarize, plaintiff must show by a preponderance of the evidence that there is a reliable and administratively feasible method for ascertaining the class. *See Marcus*, 687 F.3d at 593-94; *In re Hydrogen Peroxide*, 552 F.3d at 307. This petition for class certification will founder if the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact-finding.

B.

The trial court found the class was sufficiently numerous to warrant class action treatment. It reasoned that since Sam's Club has data showing approximately 3,500 price override transactions for which a Service Plan was also purchased, if even 5% of those price overrides were for as-is items ineligible for Service Plan protection, the class would be sufficiently numerous under Fed. R. Civ. P. 23(a)(1). Wal-Mart argues there was no factual basis to infer the number of class members and that the court engaged in impermissible speculation to find the proposed class fulfilled the numerosity

the determination of each of these inquiries is therefore essential to ascertain the class.

13

requirement. In fact, Wal-Mart asserts plaintiff failed to prove that even a single person meets the class definition.[4]

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable."[5] This requirement assures "that class action treatment is necessary." *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). Moreover, "[a] party seeking class certification must . . . be prepared to prove that there are *in fact* sufficiently numerous parties . . . ." *Dukes*, 131 S. Ct. at 2551. Mere speculation as to the number of class members—even if such speculation is "a bet worth making"—cannot support a finding of numerosity. *Marcus*, 687 F.3d at 596.

The district court in *Marcus* engaged in an inquiry similar to that by the court in the present case. The plaintiff in *Marcus* submitted 29 of 582 nationwide complaints from purchasers and lessees regarding BMWs with RFTs of any brand, but did not specify whether, as the class definition required, the complainants purchased or leased their cars in New Jersey nor how many of the complainants had Bridgestone-brand RFTs. *Id.* at 595-96. Despite the dearth of

---

[4] Wal-Mart asserts Hayes does not meet the class definition because he testified that he does not know if his power washer came with a manufacturer's warranty. J.A. vol. II, A155 at 76:13-23. We take up this issue in Part D, *infra*.

[5] While "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," we stated on the facts of at least one case that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

geographic- and brand-specific evidence, "the District Court found that the New Jersey class met the numerosity requirement because 'it is common sense that there will be more members of the class than the number of consumers who complained—probably significantly more,' and 'common sense indicates that there will be at least 40.'" *Id.* at 596 (quoting *Marcus v. BMW of N. Am., LLC*, No. 08-5859, 2010 WL 4853308, at *3 (D.N.J. Nov. 19, 2010)).

We held the district court abused its discretion, stating:

Mere speculation is insufficient. Of course, Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members. But in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding. Only then may the court rely on "common sense" to forgo precise calculations and exact numbers.

Given the complete lack of evidence specific to BMWs purchased or leased in New Jersey with Bridgestone RFTs that have gone flat and been replaced, the District Court's numerosity ruling crossed the line separating inference and speculation.

*Id.* at 596-97 (citations omitted).

15

Here, plaintiff did not fulfill his burden of supplying circumstantial evidence specific to the products and problems involved the litigation and instead premised his argument for numerosity on improper speculation. The only concrete numerical evidence presented to the court was that New Jersey Sam's Clubs had on record 3,500 transactions that included both a price-override and the sale of a Service Plan. But there is no factual basis for determining how many of these 3,500 transactions included the purchase of a Service Plan for an as-is item that was not a "last one" item and that did not have a valid manufacturer's warranty—the specific product involved in this litigation. Nor was there evidence of how many of these transactions involved Service Plans that were not ultimately honored, either by service or refund—the specific problem involved in this litigation. In short, the only conclusion that can be drawn from the evidence presented to the trial court is that the number of class members would be equal-to-or-less-than 3,500 and equal-to-or-greater-than zero.[6] Within that range, we can only speculate as to the number of class members.

---

[6] Plaintiff contends the trial court had before it evidence that less than 40 of the 3,500 price-override transactions were related to "last one" items. For this proposition, plaintiff relies on Sam's Club's handwritten logs, which document the items designated as-is and the reason for doing so. But the trial court made no such finding on this point. Moreover, even if less than 40 of the 3,500 price-override transactions were for "last one" items, there is no evidence in the record addressing how many of the 3,500 price-override transactions were for other as-is items covered by manufacturers' warranties at the time of sale.

And contrary to plaintiff's assertion, it was not defendant's burden to show how many of the 3,500 price-override transactions occurred for a reason other than the purchase of an as-is item. It was plaintiff's burden to demonstrate numerosity by a preponderance of the evidence. Since plaintiff did not fulfill this burden, there was no basis to infer that the class is sufficiently numerous to qualify for class action treatment.

Speaking more generally, where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone. *Accord Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (finding the district court engaged in impermissible speculation where it inferred numerosity for a Florida-only class "without the aid of a shred of Florida-only evidence," but only evidence on a national scale). The trial court must engage in a "'rigorous analysis,'" *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 161), and find each of Rule 23(a)'s requirements met by a preponderance of the evidence, *In re Hydrogen Peroxide*, 552 F.3d at 307, before granting certification.

Similarly, the trial court cannot take a wait-and-see approach to numerosity or any other requirement of Rule 23. Certification may not be granted because the plaintiff promises the class will be able to fulfill Rule 23's requirements, with the caveat that the class can always be decertified if it later proves wanting. To certify a class in this manner is effectively to certify the class conditionally, which Rule 23 does not permit. *See* Fed. R. Civ. P. 23 advisory committee's note, 2003 Amendments ("A court that is not satisfied that the requirements of Rule 23 have been met

17

should refuse certification until they have been met."); *In re Hydrogen Peroxide*, 552 F.3d at 319-20 (explaining the 2003 amendments to Rule 23 made clear that class certification may not be granted on a tentative basis). The trial court must "make a definitive determination that the requirements of Rule 23 have been met before certifying a class." *In re Hydrogen Peroxide*, 552 F.3d at 320.

The evidence presented in the trial court was insufficient to support a finding of numerosity. On remand, plaintiff must show either direct or circumstantial evidence specific to the problems and products involved in the litigation so the trial court may determine whether there are in fact sufficiently numerous parties to warrant class action treatment. Without such evidence, plaintiff cannot prove numerosity by a preponderance of the evidence.

C.

Wal-Mart reprises its ascertainability concerns under the predominance framework, contending common issues do not predominate over the individual inquiries necessary for determining which of the 3,500 price-override transactions involved the sale of as-is items, whether the as-items were "last one" items or otherwise came with manufacturers' warranties, and whether members who purchased Service Plans for ineligible as-is items nonetheless received service or refunds.

We have previously noted that the line dividing ascertainability from predominance is blurry. *See Marcus*, 687 F.3d at 594 n.3 ("[A]scertainability problems spill into the predominance inquiry . . . ."). But despite some overlap,

18

they remain separate prerequisites to class certification and serve distinct purposes: the ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials, *id.* at 593, whereas the predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence, *In re Hydrogen Peroxide*, 552 F.3d at 311.

The individual inquiries that Wal-Mart has cited all focus on whether putative class members fit the class definition. Thus, we think Wal-Mart's objection to certification on the basis of these inquiries is better analyzed under the ascertainability framework than the predominance framework. And as stated above, we agree with Wal-Mart that on remand the trial court must consider whether there is a reliable and administratively feasible approach for resolving the necessary inquiries.

Moreover, since ascertaining the class is logically antecedent to determining whether issues common to the class predominate over individual issues, we do not reach the question of whether Hayes could satisfy Rule 23(b)(3) predominance—a requirement "even more demanding than Rule 23(a)" and "designed for situations 'in which class-action treatment is not as clearly called for.'" *Comcast*, 133 S. Ct. at 1432 (some quotation marks omitted) (quoting *Dukes*, 131 S. Ct. at 2558); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) ("Parallel with Rule 23(a)(2)'s commonality element, . . . Rule 23(b)(3)'s predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class

19

members.").

On remand, should the trial court determine that Hayes has satisfied the requirements of Rule 23(a), it should reevaluate whether the putative class satisfies the predominance requirement.[7]

D.

In its brief, Wal-Mart draws our attention to Hayes' statement in deposition that he does not know if either the power washer or television set he purchased from Sam's Club came with a manufacturer's warranty. Notably, the trial court

---

[7] At this stage, we merely note that Hayes' breach of contract claim appears problematic. "To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007). In his complaint, Hayes contends Wal-Mart breached the Service Plan by not intending to perform its promise—apparently, the promise to insure Hayes' as-is product. Yet Hayes admits that, by its very terms, the Service Plan excludes as-is products from insurance coverage. Given this admission, Hayes may have conceded that Wal-Mart *followed* the terms of the Service Plan by intending not to insure the as-is products explicitly excluded from Service Plan coverage. Hayes has not reconciled these contrary positions or explained how breach could be shown in a manner common to the class. Indeed, his inconsistent positions may preclude any possible common proof of breach.

excluded from the class definition any consumer who purchased a Service Plan for an as-is product that was covered by a full manufacturer's warranty at the date of purchase. The court reasoned that any such product would be insured under the terms of the Service Plan.

It is axiomatic that the lead plaintiff must fit the class definition. *See, e.g.*, *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962) ("[Plaintiffs] cannot represent a class of whom they are not a part."). Although different courts have asserted different origins for this axiom,[8] they arrive at the same conclusion: where the lead plaintiff does not fit the class definition, the class may not be certified. Wal-Mart does not contend we should consider Hayes' admission under any particular framework. In fact, Wal-Mart highlights Hayes' admission in the context of numerosity—contending Hayes has failed to show that even one class member exists. But in addition to bolstering Wal-Mart's numerosity argument, we think Hayes' admission draws into question his standing to sue. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents.").

---

[8] For instance, courts have found the lead plaintiff did not fulfill the "adequacy" requirement of Rule 23(a)(4), was not similarly situated to those he sought to represent, or lacked standing. *See* 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1761 (3d ed. 2005) (collecting cases).

21

The Court of Appeals for the Second Circuit has explained that

> [s]tanding has both constitutional dimensions rooted in Article III's Case or Controversy Clause and prudential dimensions that are closely related to Art. III concerns but [are] essentially matters of judicial self-governance. The rule that a class representative must be part of the class is one of prudential standing, related to the broader principle that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 100-01 (2d Cir. 2007) (second alteration in original) (citations, footnote, and quotation marks omitted). But where the plaintiff's ability to fall within the class definition not only depends upon whether the plaintiff sustained the same injury as the class, but also upon whether the plaintiff sustained any injury at all, we find the issue of the plaintiff's constitutional standing also invoked.[9]

---

[9] "Because constitutional standing is a jurisdictional requirement, '[w]e are obliged to examine standing *sua sponte* where standing has erroneously been assumed below.'" *Lewis v. Alexander*, 685 F.3d 325, 338 n.10 (3d Cir. 2012) (alteration in original) (quoting *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001)), *cert. denied*, 133 S. Ct. 933 (2013).

To have constitutional standing, "[a] plaintiff must always have suffered 'a distinct and palpable injury to himself' that is likely to be redressed if the requested relief is granted." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (citation omitted) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 n.22 (1976)). "It is the fact, clearly established, of injury to the complainant—not to others—which justifies judicial intervention." *McCabe v. Atchison, Topeka, & Santa Fe Ry. Co.*, 235 U.S. 151, 162 (1914). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

In this case, the issue of whether Hayes fits the class definition overlaps with the issue of whether he suffered an injury. Hayes only meets the class definition if the as-is power washer he purchased was not covered by a manufacturer's warranty.[10] Similarly, Hayes only incurred an injury—*e.g.*, being defrauded or paying for a valueless product—if the as-is product for which he purchased a Service Plan was explicitly excluded from Service Plan coverage, since, importantly, Hayes does not contend that he ever sought service on his power washer and was denied. Thus, if Hayes has a valid manufacturer's warranty, he not

---

[10] We agree with the trial court that Hayes' purchase of a Service Plan for his television set cannot form the basis for class certification because it was honored when Sam's Club replaced the missing remote. Sam's Club also offered to refund Hayes the cost of that Service Plan, but Hayes refused to accept the refund.

only falls outside the class definition, but he also has a valid Service Plan and therefore has not been injured.

Presently, Hayes does not know if he has a valid manufacturer's warranty. As a result, we do not know if his suit presents an Article III case or controversy. On remand, if the trial court certifies the class, it must determine whether Hayes falls within the amended class definition and sustained an injury.[11] If Hayes does not fall within the class definition

---

[11] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [the elements of standing]. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."); *see also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) ("Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. . . . [T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (explaining that because federal "jurisdiction cannot be conferred by consent of the parties, if the facts place the district court on notice that the jurisdictional

and has no injury, the case must be dismissed.[12]

## IV.

On the existing record, this class does not survive the ascertainability and numerosity requirements as articulated by *Marcus*. But because plaintiff did not have an opportunity to address these requirements in the trial court, we will vacate the certification order and remand for further proceedings consistent with this opinion.

---

allegation probably is false, the court is duty-bound to demand proof of its truth" (quotation marks omitted)).

[12] Substitution of the lead plaintiff could only occur if there were multiple lead plaintiffs. Rubenstein, *Newberg on Class Actions* § 2:8 ("[I]f a case has only one class representative and that party does not have standing, then the court lacks jurisdiction over the case and it must be dismissed.").