Kimbrelyn CHATMAN, on behalf of herself and others similarly situated, Plaintiff,

v.

GC SERVICES, LP, Defendant.

Civil Action No. 3:14–cv–00526–CMC.

United States District Court,
D. South Carolina,
Columbia Division.

Signed Nov. 6, 2014.

Holly Elizabeth Dowd, Weisberg and Meyers, Phoenix, AZ, Aaron D. Radbil, Michael L. Greenwald, Greenwald Davidson, Boca Raton, FL, for Plaintiff.

Fred W. Trey Suggs, III, Roe Cassidy Coates and Price, Greenville, SC, Michael Twomey, William S. Helfand, Chamberlain Hrdlicka White Williams and Aughtry, Houston, TX, for Defendant.

### ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

CAMERON McGOWAN CURRIE, Senior District Judge.

This matter is before the court Plaintiff's motion for partial summary judg-

ment. Specifically, Plaintiff, Kimbrelyn Chatman ("Chatman"), seeks summary judgment as to liability on her individual claim that Defendant, GC Services, LP ("GP"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by leaving two very similar voice messages on Chatman's cellular telephone.[1] For the reasons set forth below, the motion is granted.

## STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

## FACTS

Taken in the light most favorable to GC, the facts are as follows. Chatman received two very similar voice messages on her cellular telephone in May 2013. ECF No. 52–2 ¶¶ 3–5. The earlier of the two messages was as follows: "This message is. intended for Kim Chatman. My name is Olivia [last name inaudible]. It is important for you to return my call. My number is 866–862–2789." *Id.* ¶ 5. The second message was as follows: "Hello, this message is intended for Kim Chatman. My name is Angel [last name inaudible]. Please return my phone call at 866–862–2789. Thank you." *Id.* ¶ 6.

Although the precise wording of these messages is supported only by Chatman's declaration, which was filed with her reply memorandum, the general content was addressed in evidence cited in Chatman's opening memorandum.[2] For example, Chatman addressed the general content (and absence of required disclosures) in her deposition. *See* ECF No. 39–7 at 12 (Chatman dep. at 39 explaining that the messages did not "specify who they were. They were calling like they were my friends or something or someone I knew or someone that I needed to get in contact with. For whatever reason, I didn't know because they didn't specify. It was like, My name is So-and-so. Call me back at,

1. By separate motion, Plaintiff seeks certification of a statewide class of similarly situated individuals. ECF No. 39. The court will defer ruling on that motion to allow further briefing as explained below. *See* Further Proceedings.

2. In her opening memorandum, Chatman relied on several depositions and documents produced by GC, all of which were filed as attachments to Chatman's renewed motion for class certification. ECF No. 43 (combined motion and memorandum in support of partial summary judgment); ECF No. 39 (renewed motion for class certification). As to

the precise wording of the messages, she relied on her unverified complaint and an assumption that the content was not in dispute. *See* ECF No. 43 at 5–6 (citing ECF No. 1 ¶¶ 8–12 and testimony of GC's corporate representative regarding the content of the messages). In its memorandum in opposition to summary judgment, GC argued, *inter alia,* that the motion failed because Chatman had "failed to prove the content of the messages at issue." ECF No. 47 at 1. Chatman responded with the declaration quoted above, which avers to message content identical to that alleged in the complaint.

you know, this number."); *id.* (Chatman dep. at 39–40 including the following exchange: Q. So, really, they left a message that said this is So-and-so. I'm calling about an important matter. Please call me at this number. Something like that, correct? A. Something along those lines. Q. And so what about that are you complaining about? A. I didn't know who it was. I didn't know who was calling me, and they left a few messages."). Other evidence suggests that GC has had access to a recording of these messages since at least early July 2014. *See,* *e.g.*, ECF No. 39–1 at 78–79 (deposition of GC's corporate representative, Paul Grover, referring to having read a transcript of the messages); ECF No. 52–1 (July 8, 2014 email between counsel relating to disclosure of recording); ECF No. 39–7 at 4 (defense counsel referring during Chatman's deposition to having received "a tape recording that sounds like you kind of narrating something or somebody narrating something and then a reply of some voicemail messages that say, Hello. this is So-and-so. Would you please call me at this number[.]"). GC does not, in any event, present any evidence that the messages were not as described by Chatman.

In light of other evidence discussed below, and in the absence of any evidence to the contrary, the only reasonable inference is that these messages (which included a return phone number) were, in fact, from GC. For example, GC's own documents indicate that GC representatives left voicemail messages for Chatman on May 6 and 16, 2013. *See* ECF Nos. 39–3 (GC's "Account Detail Listing" for Chatman's account); ECF No. 39–4 (GC's "Dialer Report" for Chatman's account) [3]; ECF No. 39–1 at 43–46 (Grover dep. at 42–45 explaining codes used on Account Detail Listing).[4]

In light of Chatman's uncontroverted declaration, it is also beyond dispute that the calls related to collection of a consumer debt. ECF No. 52–2 ¶¶ 7, 8 (Chatman declaration relating to nature of her debt to QVC); *see also* ECF No. 39–3 at 2 (GC's Account Detail Listing disclosing creditor (QVC) and purchases to which debt related); ECF No. 39–1 at 37 (Grover dep. at 36 indicating client for whom calls were made to Chatman was QVC); *id.* at 67 (Grover dep. at 77 agreeing "specific debt issue in this case" was a "consumer debt," stating he "would imagine" it was a debt "incurred for personal, family, or household purposes[,]" and agreeing messages left "were an effort to collect that debt" and that GC had no other reason to

---

**3.** The court refers to both records as belonging to GC. One or both may, however, be prepared for GC by a third-party vendor. There is, however, no dispute that the records were prepared by or for GC and relate to Chatman's account.

**4.** GC Records indicate messages were left on Chatman's voicemail on May 6 and May 16, 2013, as well as on two later dates. ECF No. 39–3 at 2–3; ECF No. 39–4. GC suggests that there is some dispute of fact as to when at least one of the messages was left, because the complaint alleges that messages were left on May 6 and 15, 2013 (thus, the date of the second message as alleged in the complaint is off by one day from GC's records). Plaintiff's declaration, however, states only that the messages were left during May 2013. ECF No. 52–2 ¶ 3. Similarly, in her deposition, Chatman testified that she "received calls last year, 2013, probably in the month of May." ECF No. 39–7 at 4 (Chatman dep. at 8). Thus, Chatman's *testimony* is consistent with GC's record evidence of when it left messages, even if her *unverified complaint* suggests a minor date discrepancy. This one day difference between the allegations and the evidence does not, alone, raise a genuine issue of material fact that the two messages were, in fact, left on Chatman's voicemail during May 2013.

call Chatman).[5]

GC's corporate representative conceded that he had read a transcript of the alleged messages and that the messages reflected on the transcript "followed GC company policy." ECF No. 39–1 at 68–69 (Grover dep. at 78–79). The corporate representative also confirmed that it has "always" been GC's policy "that if ... a consumer's outgoing voice message does not include a first and a last name, GC does not leave a message which states that it is a debt collector and it is GC Services." *Id.* at 69 (Grover dep. at 79). That policy, which is in written form, instructs GC's employees that *they should leave a "Voicemail Disclaimer," meaning a disclosure that the caller is a debt collector,* only if the caller first "verified that a telephone number for a debtor is a valid number." ECF No. 39–2 at 4 (listing several means of verifying the number including if the debtor has confirmed the number or the outgoing message provides both a first and last name); *see also* Grover dep. at 59 (agreeing that GC's employees were instructed to "just leave the name and a phone number" unless they had "identified the customer or talked to them at that number before."); ECF No. 47–3 ¶¶ 4, 5 (Grover declaration explaining why GC does not disclose that it is a debt collector until it has confirmed that the number belongs to the debtor).

A substantial portion of GC's business is collecting debts for other companies. Gro-ver dep. at 9–10 (agreeing GC is one of the largest private debt collection agencies in North America and estimating debt collection constitutes 40 to 45% of GC's business). Thus, GC is a third-party debt collector and was acting in that capacity when it left messages for Chatman in May 2013. *See* ECF No. 47–3 ¶¶ 2, 3 (Grover declaration addressing GC's "third-party debt collection procedures and practices" such as those followed on behalf of "QVC in this case").

## DISCUSSION

Chatman argues that she is entitled to summary judgment on liability on both of her claims. Specifically, she argues that the undisputed evidence establishes that GC violated 15 U.S.C. §§ 1692d(6) and 1692e(11) by leaving the two messages quoted above because GC is a debt collector as defined by the FDCPA, the messages related to collection of a consumer debt, and the messages failed to disclose that the call was from GC, that GC was a debt collector, or that the message related to collection of a debt.

GC opposes summary judgment on both factual and legal grounds.[6] GC's first two arguments relate to the adequacy of Chatman's proffer of evidence. ECF No. 47 at 3–6. For reasons explained above in the statement of facts, these arguments are defeated by Chatman's declaration filed with her reply.[7]

---

5. In a declaration filed with GC's opposition memorandum, Grover states that he has no knowledge whether the debt at issue was incurred "primarily for personal, family or household purposes." ECF No. 47–3 ¶ 2. Even if this statement is sufficient to overcome his deposition concession that the debt was a consumer debt, it would not raise a genuine issue of material fact as to the nature of the debt in light of Chatman's declaration.

6. GC also argues that Chatman lacks standing as a result of GC's earlier offer of judgment. That argument is rejected here for the same reason the court denied GC's motion to dismiss for lack of subject matter jurisdiction. *See* ECF No. 36 (order denying motion to dismiss).

7. As to the adequacy of the evidence, GC argues that Chatman has "failed to prove that the underlying debt was primarily for personal, family, or household purposes and has

GC's third argument is a legal argument that the voicemail messages are not "communications" as defined by the FDCPA and, consequently, are not subject to the disclosure requirements of 15 U.S.C. § 1692e(11). ECF No. 47 at 7–9. GC's fourth argument is that the messages did not violate 15 U.S.C. § 1692d(6) because they were left solely for the purpose of locating Chatman, and, therefore, fall within the exemption for calls pursuant to 15 U.S.C. § 1692b. ECF No. 47 at 9–12. These legal arguments are rejected for reasons explained below.

**Fair Debt Collection Practices Act.** The FDCPA is a comprehensive statute that requires and prohibits certain activities in connection with collection of debts by debt collectors. *See* 15 U.S.C. § 1692 *et seq.* The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Consistent with its protective purpose, the FDCPA provides consumers with a private right of action for violations of the FDCPA. 15 U.S.C. § 1692k (establishing private cause of action for actual and statutory damages and authorizing an award of attorneys fees).

■ **Elements of an FDCPA Claim.** To establish a violation of the FDCPA, Chatman must prove that (1) she has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *E.g., Webster v. ACB Receivables Mgmt., Inc.,* 15 F.Supp.3d 619, 624–25 (D.Md. 2014) (listing elements).

■ **First Element.** Chatman has presented uncontroverted evidence that she was the object of collection activity by GC and that the debt at issue was a consumer debt arising from Chatman's purchases from QVC. Chatman has presented further evidence that she received two voicemail messages during May 2013, both of which related to GC's efforts to collect on behalf of QVC. Thus, Chatman has satisfied the first element, that she was the object of collection activity arising from consumer debt and that the two complained-of messages were part of this collection activity.

■ **Second Element.** Chatman has presented uncontroverted evidence that GC is a debt collector as defined by the FDCPA. *See* 15 U.S.C. § 1692a(6) ("The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."); ECF No. 39–1 at 10–11 (Grover dep. at 9–10) (agreeing GC is "one of the largest" private collection agencies in North America, and estimating that 40 to 45 percent of its business is collecting debt and that it currently has from seven to nine million "active third-party debt col-

failed to prove the content of the messages at issue." ECF No. 47 at 1 (summarizing arguments in opposition to summary judgment). The court agrees that the precise content of the messages was not established by the record evidence as it existed when GC filed its response and will assume for purposes of this

order that Chatman's proof of the nature of the debt was also deficient at the same point in the proceeding. Any evidentiary deficiencies on these two points were, however, cured when Chatman filed her declaration with her reply. *See supra* at 2 (Facts).

lection accounts"). Chatman has also presented evidence that the messages at issue in this action were left as part of GC's debt collection efforts on behalf of QVC. ECF No. 39–1 at 67 (Grover dep. at 77) (agreeing that "the voice messages that GC's debt collectors left for Ms. Chatman were an effort to collect [a debt owed to QVC]"). GC does not argue otherwise.

**Third Element.** With respect to the third element, Chatman argues that the two messages violated 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(11). *See* ECF No. 1 ¶ 56 (first cause of action), ¶ 58 (second cause of action). Subject to one specific exception, Section 1692d(6) prohibits "the placement of telephone calls [by a debt collector] without meaningful disclosure of the caller's identity." The one exception is for calls placed pursuant to Section 1692b, which addresses communications by a debt collector with "any person other than the consumer for the purpose of acquiring location information about the consumer[.]"[8] "Meaningful disclosure requires that the debt collector state his or her name, capacity, and provide enough information to the consumer as to the purpose of the call." *Doshay v. Global Credit Collection Corp.*, 796 F.Supp.2d 1301, 1304 (D.Colo.2011) (addressing claim under Section 1692d(6)). Section 1692e(11) requires a debt collector, in all communications with the consumer after the first (which must include more detailed disclosures) to "disclose … that the communication is from a debt collector."

Chatman has presented uncontroverted evidence that the two messages at issue provided only the caller's first name, an inaudible last name, and a request that Plaintiff return the call at a specified number. Neither message disclosed that the call was made by or on behalf of GC, that GC was a debt collector, or that the call was for the purpose of collecting a debt. Thus, based on Plaintiff's uncontroverted description of the messages, it appears at first blush that both messages violated the plain language of Sections 1692d(6) and 1692e(11).

GC argues that, even if the messages were as Chatman alleges, they did not violate Section 1692e(11) because the messages were not "communications" as defined by the FDCPA. ECF No. 47 at 7–9. GC also argues that the alleged messages did not violate Section 1692d(6) because the calls were for the purpose of locating Chatman and, consequently, were exempt under Section 1692b. ECF No. 47 at 9–12. Both arguments fail for reasons explained below.

**FDCPA Communication.** GC's argument that the messages left for Chatman are not "communications" subject to the FDCPA rests on a clear minority interpretation of the FDCPA's definition of communication,[9] which appears to have been adopted by only one court addressing a claim similar to the one advanced here (a claim advanced by a consumer debtor based on a message left for the consumer debtor). *See Biggs v. Credit Collections, Inc.*, No. CIV–07–0053, 2007 WL 4034997 at *4 (W.D.Okla. Nov. 15, 2007) (character-

---

**8.** Communications under Section 1692b are subject to various restrictions including a prohibition on disclosing that the consumer "owes any debt." 15 U.S.C. § 1692b(2). The caller is also prohibited from "identify[ing] his employer" unless "expressly requested." *Id.*

**9.** The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

izing the statutory definition of communication as "oddly narrow" and holding voicemail messages left for consumer were not communications because they " 'convey[ed]' no 'information regarding a debt.' "); ECF No. 47 at 8–9 (addressing *Biggs* ).

In support of its argument that its messages were not "communications" subject to the FDCPA's disclosure requirements, GC initially relies on *Zortman v. J.C. Christensen & Assocs., Inc.*, 870 F.Supp.2d 694 (D.Minn.2012). GC characterizes *Zortman* as holding that the FDCPA's definition of "communication" is satisfied only if the caller actually "disclose[s] substantive information regarding the debt, such as identifying the debt[,]" as opposed to communications where the person receiving the message would have to draw inferences or make assumptions in order to conclude that the call related to a debt or that a person identified in the message was a debtor. ECF No. 47 at 7.

As with most of the cases on which GC relies (with the sole exception of *Biggs* ), *Zortman* addresses the definition of "communication" in the context of a message received by a person other than the debtor. The specific circumstances in *Zortman* were somewhat unusual in that the message was actually left on the consumer debtor's (Zortman's) cellular phone. Third parties (Zortman's children) heard the messages only because Zortman loaned her phone to her children. *See Zortman*, 870 F.Supp.2d at 704–05. In concluding there was no prohibited communication (in

violation of Section 1692b) when Zortman's children heard the messages, which included a statement that the calls were from a debt collector, *Zortman* relied, in part, on the absence of any express statement that the call related to a debt owed by Zortman. *Id.* at 705. The court further noted that, because Zortman worked for a debt collector, third-party listeners might have assumed the call related to her employment. Ultimately, the court held that the communications were not even "indirect communications" relating to a debt because the "unintended listener[s]" would first have to draw or make two "inferences or assumptions" beyond what was expressly disclosed before they could conclude the call (1) was about a debt and (2) the debt was owed by Zortman. *Id.* Thus, *Zortman* appears to adopt a narrow construction of the FDCPA's definition of "communication," albeit in the context of a claim for improper disclosures made to third parties.[10]

With the exception of *Biggs*, the other cases on which GC relies also address the FDCPA's definition of communication in the context of the FDCPA's limitations on debt collector's communications with third parties (Section 1692b). For example, GC relies on *Evankavitch v. Green Tree Serv., LLC*, 979 F.Supp.2d 535, 541 (M.D.Pa. 2013), which held that messages left with third parties asking them to give the debtor a message to call back were not "communications" under the FDCPA because they "conveyed no information whatsoever about the debt." GC also relies on *Horkey*

---

10. Although GC does not cite *Zortman* for this point, *Zortman* also notes that Defendant was "obligated to disclose its identity" even if the call was not a "communication" as defined by the FDCPA. *Id.* at 705 n. 4. This last point suggests the *Zortman* court would find a violation in the present case, where the debt collector left a message for the debtor but did not disclose the debt collector's name or that

it was a debt collector. *See also id.* at 706–07 (addressing "practical reasons why" FDCPA should not be interpreted "to include mere identification as a debt collector as a violation of a consumer's privacy[,]" including the unsavory alternatives of "forcing hang-up or anonymous calls[,]" which pose their own risks of harassment or embarrassment).

*v. J.V.D.B. & Assocs., Inc.*, 179 F.Supp.2d 861 (N.D.Ill.2002), which denied plaintiff's motion for summary judgment to the extent the alleged violation rested on the mere fact the debt collector asked plaintiff's co-worker, who answered plaintiff's work number, if plaintiff was available. *Id.* at 867–68 (noting there was no evidence debt collector discussed debt during communication); *see also id.* at 868 (granted plaintiff's motion for summary judgment in other respects, including based on debt collector using profanity in leaving message with co-worker).[11] GC also relies on *Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F.Supp.2d 264 (S.D.N.Y.2001), which suggested in *dicta* that the court would not find a violation of the FDCPA's prohibition on discussions of the consumer's debt with third parties unless the third party "became aware that [debt collector] was seeking to collect a debt" during the course of the communications.[12]

▮ This court declines to follow the minority line of cases relied on by GC and, instead, adopts the majority view, which construes the FDCPA's definition of "communication" to encompass voicemail messages left for the consumer-debtor, even if nothing in those messages refers to a debt. As explained in *Foti v. NCO Fin. Sys., Inc.*:

[G]iven the choice of language by Congress, the FDCPA should be interpreted to cover communications that convey, directly or indirectly, any information relating to a debt, and not just when the debt collector discloses specific information about the particular debt being collected. Indeed, a narrow reading of the term 'communication' to exclude instances ... where no specific information about a debt is explicitly conveyed could create a significant loophole in the FDCPA, allowing debtors [sic] to circumvent the § 1692e(11) disclosure requirement, and other provisions of the FDCPA that have a threshold "communication" requirement, merely by not conveying specific information about the debt ... Such a [narrow] reading is inconsistent with Congress's intent to protect consumers from "serious and widespread" debt collection abuses.

424 F.Supp.2d 643, 657–58 (S.D.N.Y.2006). Numerous other courts have followed this interpretation. *See, e.g., Doshay v. Global Credit Collection Corp.*, 796 F.Supp.2d 1301, 1304 (D.Colo.2011) (citing *Foti* in holding voicemail message in which "Defendant's employee neither identified himself as a debt collector nor articulated that the purpose of the voicemail message was to collect a debt" constituted a communication under the FDCPA).[13]

11. It is not entirely clear that *Horkey* represents a narrow interpretation of what constitutes a "communication," as opposed to a finding that there was no violation, *despite* there being a communication. *Id.* at 868 ("The Court agrees with Defendant and finds that there is no evidence that [the debt collector] *in communicating with Plaintiff's co-worker,* ... discussed Plaintiff's debt."). The *Horkey* court does not, in any event, expressly address what may constitute a "communication" under the FDCPA.

12. Padilla alleged that the debt collector asked the receptionist at Padilla's office about Padilla's "salary, pay schedule, and employment status," but presented only hearsay in support of this claim. *Id.* at 274. Evidence available from the debt collector's telephone logs indicated only that the debt collector had asked the receptionist to be connected to Padilla on several occasions and had once asked the receptionist to verify Padilla's employment. *Id.* The court held "[t]his evidence does not reflect that [debt collector] improperly communicated with the receptionist in connection with the collection of Padilla's debt." *Id.*

13. Numerous other cases to the same effect are cited in Chatman's memoranda. *See* ECF No. 43 at 15–18.

To the extent GC suggests that following the majority rule would place it in a Catch–22 because of prohibitions on communications with third parties, the court rejects that argument. *See* ECF No. 47 at 11 (asserting that "[i]f GC Services left the mini-miranda at Plaintiff's voicemail without knowing who actually listened to or controlled the phone, it would be subject to liability for violating other portions of the FDCPA.").[14] As the Eleventh Circuit explained in *Edwards v. Niagara Credit Solutions, Inc.*:

> Niagara complains that if it is not permitted to leave out of its answering machine messages the disclosure required by § 1692e(11), the result will be that it cannot leave any messages on answering machines. That assumes an answering machine message that includes the disclosure required by § 1692e(11), if heard by a third party, would violate § 1692c(b). We have not decided that issue, but even if Niagara's assumption is correct, the answer is that the Act does not guarantee a debt collector the right to leave answering machine messages.

*Edwards*, 584 F.3d 1350, 1354 (11th Cir. 2009); *see also Baker v. Allstate Fin. Services, Inc.*, 554 F.Supp.2d 945, 950 (D.Minn.2008) (rejecting defendant's argument that nondisclosure was justified by corresponding risk disclosure would violate other provisions of the FDCPA and noting that this argument had been "repeatedly rejected in the context of debt collector messages left on a consumer's home voicemail").

In sum, the court rejects GC's arguments that the messages left on Chatman's voicemail were not communications under the FDCPA. It follows that Chatman is entitled to summary judgment on liability on her claim for violation of 15 U.S.C. § 1692e(11), because the messages did not indicate that the caller was a debt collector.

■ **Section 1692b Exception.** The court also rejects GC's argument is that the "messages were left in an attempt only to locate Plaintiff" and, therefore, fall within Section 1692d(6)'s exception for calls made under Section 1692b. ECF No. 47 at 9–11. The plain language of Section 1692b precludes this argument because that section applies to communications "with any *person other than the consumer* for the purpose of acquiring location information about the consumer[.]" 15 U.S.C. § 1692b (emphasis added). While GC may not have known whether the number it had for Chatman was, in fact, her current or correct number, it nonetheless intended to and did reach Chatman's cell phone.[15] Under these circumstances GC cannot argue that the communication was "with any person other than the consumer."

In any event, GC admitted, through its corporate representative, that the messages were left in an effort to collect a debt and for no other purpose.[16] Any suggestion to the contrary in Grover's

---

14. This argument is made as part of GC's position that it did not violate Section 1692d(6) in light of the exemption for calls under Section 1692b, but may be intended to relate to the Section 1692e(11) claim as well.

15. Both messages stated that the "message is intended for Kim Chatman." This language does not suggest an effort to speak with a third party in order to locate Chatman.

16. The critical exchange was as follows:

> Q: And the calls, the voice messages that GC's debt collectors left for Ms. Chatman were an effort to collect that debt?
> A: Correct.
> Q: There wouldn't have been any other reason for GC to call Ms. Chatman?
> A: No.

Grover dep. at 77.

post-deposition declaration is insufficient to modify his prior unequivocal testimony. *See* Grover declaration ¶¶ 4, 5 (stating that, because GC cannot be sure that the numbers they are given by the creditor for the debtor are valid, "the initial calls to the debtor are made in an effort to locate the debtor").

GC's argument that the messages were permissible under Section 1692b also fails because the argument is nothing more than a creative attempt to avoid the clear mandates of Section 1692d(6) and 1692e(11).

As explained in *Zortman*, on which GC relies in arguing for a narrow definition of the term "communication":

> [N]early every court to have faced the question has determined that answering machine or voicemail messages are 'communications' and that §§ 1692d(6) and 1692e(11) require debt collectors to identify themselves.... Debt collectors defended their practices, in what is referred to as the *Foti* line of case, by asserting that identification would take them out of the frying pan of the §§ 1692d(6) and 1692e(11) disclosure requirements and into the fire of the § 1692c(b) prohibition against communications with third parties. The debt collectors' argument was almost universally rejected.

\*　　\*　　\*

Thus, the statutory language of §§ 1692d(6) and 1692e(11), as interpreted by courts to date, requires debt collectors to meaningfully identify themselves and state that they are calling to collect a debt (sometimes referred to as the "mini Miranda") in communications with a consumer, and § 1692c(b) does nothing to eliminate that requirement. *Zortman*, 870 F.Supp.2d at 699–700; *see also supra* n. 10.

In sum, both the plain language of Section 1692b and case law interpreting the scope of this exemption foreclose GC's argument that messages it left on Chatman's cell phone are exempt from the disclosure requirements of Section 1692d(6). Chatman is, therefore, entitled to summary judgment on liability that GC's messages violated 15 U.S.C. § 1692d(6) because the messages failed to include "meaningful disclosure of the caller's identity."

## FURTHER PROCEEDINGS

The determinations above resolve the issues of liability as to Chatman's individual claims, leaving open the issues of damages and attorneys' fees. Chatman's motion for class certification also remains pending. The court will defer ruling on the class certification motion to allow the parties to file supplemental briefs addressing whether the present ruling has any impact on class certification. Any proposed modifications to the class definition should be addressed in the same memoranda.[17]

17.  Chatman's reply in support of class certification suggests that some of the concerns raised by GC, particularly with respect to ascertainability of the class, might be resolved by modification of the class definition. ECF No. 49 at 6 n. 4. She does not, however, suggest any specific modifications. As Chatman bears the burden of establishing that certification is warranted, it is incumbent on her to propose a workable definition and to demonstrate that there is a reliable and ad- ministratively feasible method of ascertaining the individuals encompassed by that definition. *See Hayes v. Wal–Mart,* 725 F.3d 349 (3d Cir.2013) (holding "plaintiff must show by a preponderance of the evidence that there is a reliable and administratively feasible method for ascertaining the class" and that this showing cannot be made "if the only proof of class membership is the say-so of putative class members or if ascertaining the class requires extensive and individualized fact-

Because the court will allow Plaintiff to modify her class definition, the deadlines for supplemental briefing will be follows: Plaintiff shall file a supplemental brief in support of class certification no later than **January 16, 2015;** Defendant shall file a responsive memorandum `no later than **February 2, 2015.** The court has allowed substantial time between entry of this order and the dates for filing supplemental memoranda in order to permit time for the parties to confer regarding issues raised by the class certification motion and memoranda. To facilitate that process, the court directs counsel to confer within two weeks of entry of this order.

## CONCLUSION

For the reasons set forth above, Chatman's motion for partial summary judgment is granted and the court holds that she has established liability as to her claims under 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(11). Further proceedings as to damages will be deferred until the court rules on Chatman's renewed motion for class certification, as to which supplemental briefing is required as indicated above.

---

finding"); *Marcus v. BMW of North America, LLC,* 687 F.3d 583 (3d Cir.2012) (reversing order certifying class, in part because "parameters of [proposed] class definition [were] far from clear," noting "*post hoc* clarification is no substitute for a readily discernible, clear, and precise statement of the parameters defining the class ... to be certified" (internal quotation marks omitted), and addressing "serious ascertainability issues" resulting, in part, from ambiguities in the definition).