**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 21-2035

In re:  BOY SCOUTS OF AMERICA, a/k/a BSA;
DELAWARE BSA, LLC,

Debtors

CENTURY INDEMNITY COMPANY, as successor to CCI
Insurance Company, as successor to Insurance Company of
North America and Indemnity Insurance Company
of North America

Appellants

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-20-cv-00798)
District Judge: Honorable Richard G. Andrews

Argued on March 2, 2022

Before:  McKEE, AMBRO, and SMITH, Circuit Judges

(Opinion filed: May 24, 2022)

Jonathan D. Hacker **(Argued)**
Andrew R. Hellman
O'Melveny & Myers
1625 Eye Street, N.W.
Washington, DC  20006

Tancred V. Schiavoni
O'Melveny & Myers
7 Times Square
Time Square Tower, 33rd Floor
New York, NY  10036

                    Counsel for Appellants

Derek C. Abbott
Andrew M. Remming
Paige N. Topper
Morris Nichols Arsht & Tunnell
1201 North Market Street, 16th Floor
P. O. Box 1347
Wilmington, DE  19899

Michael C. Andolina
Matthew E. Linder
White & Case
111 South Wacker Drive
Suite 5100
Chicago, IL  33130

Jessica C. Lauria
White & Case
1221 Avenue of the Americas
New York, NY  10020

Counsel for Appellee Boy Scouts of American and Delaware BSA, LLC

Robert N. Hochman **(Argued)**
James W. Ducayet
Sidley Austin
One South Dearborn Street
Chicago, IL  60603

Counsel for Appellee Sidley Austin

_____

OPINION OF THE COURT
_____

AMBRO, <u>Circuit Judge</u>

Sidley Austin LLP represented insurer affiliates of Chubb Ltd.—Century Indemnity Co., Westchester Fire Insurance Co., and Westchester Surplus Lines Insurance Co. (collectively, "Century")—in obtaining backup coverage from reinsurers of Century's policies.  Sidley also represented the Boy Scouts of America and Delaware BSA, LLC (collectively, "BSA") in its restructuring efforts under the Bankruptcy Code following myriad molesting claims of scouts.  Though BSA made coverage claims under Century's policies, it did so while represented by another firm—Haynes and Boone LLP.  And

Sidley's reinsurance services for Century were limited to claims made against the reinsurers (and not BSA).

Century, however, came to feel jilted and claimed a conflict concerning Sidley's representation of it and BSA. It objected when Sidley filed a retention request in BSA's bankruptcy case. Century's objection only concerned the ability of Sidley to represent BSA, and the Bankruptcy Court determined that Sidley could do so effectively, thus approving its retention. The District Court affirmed, and now Century appeals to us. We agree with those Courts and hence affirm Sidley's retention as bankruptcy counsel to BSA.

## I. BACKGROUND

Century issued insurance to BSA, and those insurance policies are now assets of the BSA estate. To help cover its obligations to BSA in the event of claims, Century purchased reinsurance—think of it as insurance for insurance companies—and, after BSA made claims related to sexual-abuse litigation, Century sought to collect on those policies. On October 5, 2018, Century hired Sidley's Insurance and Financial Services Group to represent it in ensuing reinsurance disputes. That representation did not extend to the underlying direct insurance issued by Century to BSA. It (BSA) was not a party to the reinsurance disputes, and the matters did not pertain to whether Century would pay BSA under the direct insurance contracts.

At roughly the same time, starting on September 26, 2018, BSA retained Sidley to explore restructuring options. The engagement letter for Sidley specified that it would not "advis[e] [BSA] on insurance coverage issues." J.A. at 1199.

4

BSA had already retained, without objection, Haynes and Boone to serve as insurance counsel. Sidley filed BSA's bankruptcy petition on February 18, 2020, and subsequently filed a retention application on March 17.[1] Century objected.

By this time the attorney-client relationship between Century and Sidley had unraveled. Century appears to have first learned that Sidley was representing BSA when *The Wall Street Journal* published an article on December 13, 2018, identifying Sidley as BSA's counsel. But Century did not object—at least formally—to Sidley's representation of BSA until the autumn of 2019. In the interim, BSA engaged in substantive discussions with its insurers, including Century. While Haynes and Boone was the sole insurance counsel, Sidley attorneys were present at some meetings. Century did not object at the time. But in late October 2019, Century told Sidley that its representation of BSA created a conflict. On November 3, Century's counsel objected to a mediation related to BSA's restructuring because of Sidley's presence. Sidley responded the next day by putting a formal ethics screen into place between its restructuring team and its reinsurance team.

Sidley and Century could not reach an agreement. The former continued to maintain there was no conflict, but on January 3, 2020, Century sent a letter explaining that it could not provide a conflict waiver for Sidley to represent BSA or

---

[1] There is a tentative settlement proposal between BSA and Century. The proposal specifically excludes Century's claims against Sidley, and it is included in the proposed reorganization plan still pending before the Bankruptcy Court. *See generally In re Boy Scouts of America*, No. 20-10343-LSS (Bankr. D. Del. filed Feb. 18, 2020).

consent to Sidley's withdrawal of Century's representation. Indeed, Century never gave Sidley a waiver for any claimed conflict. In response to Sidley's suggestion that Century was using the threat of disqualification as a litigation tactic, Century asserted that it was "shocking and offensive that Sidley would suggest that Chubb has an improper motive in trying to address the conflict issue." J.A. at 1391. Sidley then provided written notice to Century on January 16 that it was withdrawing due to a breakdown in the attorney-client relationship. The Bankruptcy Court found Sidley finished withdrawing on either February 20 or 24, 2020.

Fast forward to September 2020, when the Sidley attorneys working for BSA moved to a new firm, taking with them BSA as a client. Sidley is thus no longer actively working on BSA's bankruptcy. Century is separately pursuing its grievances about the representation it received from Sidley in arbitration as provided in their governing retention agreement.

The parties dispute what information Century provided to Sidley and the significance of it. The Bankruptcy Court found that Sidley's representation of Century "could be 'substantially related' to at least some aspects of [BSA's] bankruptcy case." J.A. at 38. But it also concluded that while Sidley may have received confidential information in the reinsurance matter relevant to BSA's bankruptcy, no privileged or confidential information was shared between the two legal teams at Sidley. *Id.* at 40.

The Bankruptcy Court, in a well reasoned ruling, approved Sidley's retention *nunc pro tunc* to the February 18 petition date. It concluded that Sidley's retention did not run afoul of the pertinent provision in the Bankruptcy Code—

6

§ 327[2]—because Sidley's representation of Century did not render it unable to represent BSA effectively. The Court then considered the potentially applicable Rules of Professional Conduct—Rules 1.7 and 1.9[3]—and noted that, even if certain legal positions taken in the bankruptcy case regarding the BSA/Century insurance policies "could be harmful to Century's efforts to collect on its [re]insurance," *id.*, disqualification was unnecessary because BSA had special insurance counsel and Sidley had put an ethics screen into place, *id.* at 38–40.

Century appealed to the District Court, which affirmed in a thorough opinion. The Court observed that the relevant facts were not in dispute. It separately considered § 327(a) and the Rules of Professional Conduct (though with no decision on

---

[2] Section 327(a) of the Bankruptcy Code (Title 11 of the U.S. Code) provides that "the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." Section 327(c) adds that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest."

[3] The Delaware Bankruptcy Court has adopted the American Bar Association's Model Rules of Professional Conduct. *See* Bankr. D. Del. Ct. R. 9010-1(f). Rule 1.7 governs concurrent conflicts of interest, and Rule 1.9 concerns obligations to former clients. Each is set out in Section III.C below.

the latter).  As had the Bankruptcy Court, the District Court discerned no actual conflict for § 327 purposes because, at the time of its retention, Sidley held no interest adverse to BSA.  Even assuming a professional rule violation, it held the Bankruptcy Court exercised its discretion appropriately in deciding disqualification was even then not a fitting remedy in this context.  By proceeding in this way, the Court held for Sidley without deciding the merits of the alleged violations of Rules 1.7 and 1.9.

On appeal to us, Century asserts that § 327 "does not operate in a vacuum but rather incorporates ethical rules from state law—here, the Rules of Professional Conduct." Century's Op. Br. at 27.  By their declining to determine whether Sidley violated Rules of Professional Conduct 1.7 and 1.9 and in failing to find an actual conflict under § 327—the latter requiring *per se* disqualification—Century alleges the Bankruptcy Court erred as did the District Court in affirming that judgment.

## II.    JURISDICTION AND STANDARD OF REVIEW

This is a core proceeding under 28 U.S.C. § 157(b)(2). The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157 and 1334.  The District Court had jurisdiction under 28 U.S.C. § 158(a)(1) over the appeal of the Bankruptcy Court's decision, a final order.  *See In re Congoleum Corp.*, 426 F.3d 675, 684–85 (3d Cir. 2005).  We have jurisdiction under 28 U.S.C. § 1291.

The District Court acted as an appellate court, and we review both its factual and legal determinations.  *Id.* at 685. "[T]o determine whether the District Court erred, we review

the [B]ankruptcy [C]ourt's findings by the standards the District Court should have employed." *Id.* That means we review for abuse of discretion the decision to approve Sidley's application for retention as BSA's bankruptcy counsel. *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 470 (3d Cir. 1998); *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). "An abuse of discretion exists where the . . . decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Marvel*, 140 F.3d at 470 (quoting *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1476 (3d Cir.1996) (*en banc*)). We give fresh, or plenary, review to legal determinations and review factual findings for clear error. *Id*.

## III.   ANALYSIS

Before turning to the merits, we detour to consider whether this appeal has become moot.

### A.    Standing and Mootness

As a threshold issue, does an active case or controversy continue?  If no, we lack authority under Article III of the Constitution to consider the merits of Century's appeal. *See Hamilton v. Bromley*, 862 F.3d 329, 334–35 (3d Cir. 2017). When the requirements necessary for standing at the start of a case disappear, it becomes moot and no longer satisfies Article III's case-or-controversy requirement (unless the defendant voluntarily ceased the challenged conduct in response to litigation or the injury is likely to recur while evading review). *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189–91 (2000).

There is an additional prudential (that is, not-constitutional) requirement in bankruptcy appeals for standing: it is limited to "persons aggrieved" by an order of the Bankruptcy Court. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004). Potential appellants are "persons aggrieved" only if they can show that "the order of the bankruptcy court 'diminishes their property, increases their burdens, or impairs their rights.'" *Id.* (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000)); *see also PWS Holding*, 228 F.3d at 249 ("[O]nly those whose rights or interests are directly and adversely affected pecuniarily by an order of the bankruptcy court may bring an appeal." (internal quotation marks and citation omitted)).

But when considering appeals from an order approving the retention of counsel, we need not scrutinize the appellant's injury in as much detail. Retention of counsel "implicate[s] the integrity of the bankruptcy court proceeding as a whole"; hence it is "extremely important to resolve" those disputes. *Congoleum*, 426 F.3d at 685. Absent immediate appeals, meaningful review of potentially serious ethical issues might never occur. *Id. Congoleum* involved whether insurers had standing to appeal the Bankruptcy Court's approval of a retention request. Only the insurers there had reason to challenge the retention order, and holding they lacked standing would have impeded self-regulation of the profession. *Id.* at 686–87. These same considerations apply here. Accordingly, the Bankruptcy Court's order affects interests of Century sufficiently for it to be a "person aggrieved."

Additionally, even though Sidley no longer has an active role in the underlying bankruptcy case, the possibility remains that we could order the disgorgement of its fees. Thus,

10

the outcome of this retention dispute has continuing implications for the BSA estate and its creditors. For these reasons, we conclude Century continues to have standing to bring this appeal and the matter is not moot.

## B.    Section 327

Section 327(a) of the Bankruptcy Code is the starting point for retaining a debtor's professionals. It authorizes the trustee (and, under § 1107(a) of the Code, a debtor in possession), with court approval, to employ professionals, including lawyers, if they (1) "do not hold or represent an interest adverse to the estate" and are (2) "disinterested persons." 11 U.S.C. § 327(a); *see also In re BH & P, Inc.*, 949 F.2d 1300, 1314 (3d Cir. 1991). The latter are defined, in relevant part, as those who do "not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). Save the "any other reason" catchall, the focus dead ends at the debtor and especially its estate.

We recognize these two prongs (*i.e.*, not holding an adverse interest and being disinterested) as formally distinct. *BH & P*, 949 F.2d at 1314. That said, in many cases—including this one—they effectively collapse into a single test. *See* 1 Collier on Bankruptcy ¶ 8.03[9] (16th ed. 2022) (noting that "[t]hese two tests invoke the same consideration of whether the professional holds or represents an adverse interest to the interests of the debtor and its estate"); *see also BH & P*, 949 F.2d at 1314 ("There is, indisputably, some overlap

between the [§] 327(a) standard and [§] 101(14)[C] disinterest requirement.").

Section 327 conflicts can be sorted into three subcategories: (1) actual conflicts of interest, (2) potential conflicts of interest, and (3) appearances of conflict. *Marvel*, 140 F.3d at 476. The implications of an apparent conflict depend on which category it fits. Attorneys with actual conflicts face *per se* disqualification, but disqualification is at the court's discretion for attorneys with potential conflicts. *Id.* And a court "may not disqualify an attorney on the appearance of conflict alone." *Id.*

Though not unfettered, bankruptcy courts have "considerable discretion in evaluating whether professionals suffer from conflicts." *In re Pillowtex, Inc.*, 304 F.3d 246, 254 (3d Cir. 2002). Indeed, actual conflicts of interests in the § 327 context do not have a strict definition. *Id.* at 251. Courts thus proceed "case-by-case." *Id.* (quoting *BH&P*, 949 F.2d at 1315). Pragmatically, a conflict is actual when the specific facts before the bankruptcy court suggest that "it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest." *Id.*

Century asks us to adopt a new rule and hold that courts must always consider the applicable Rules of Professional Conduct before reaching a conclusion on § 327. We decline to do so. Section 327 and the Rules of Professional Conduct impose independent obligations. *Cf. Congoleum*, 426 F.3d at 687–92 (analyzing separately the applicable Rules of Professional Conduct and § 327); *see also* 1 Collier on Bankruptcy § 8.03[2] ("[A]ttorneys have an independent duty, apart from the particular requirements of the Bankruptcy Code

12

or rules, to conform their activities to [the local rules governing professional conduct].").  Professional conduct rules may be relevant and "consulted when they are compatible with federal law and policy . . . ."  *Congoleum*, 426 F.3d at 687.[4]

Yet, depending on the facts, the Bankruptcy Court may not need to examine the relevant professional rules to decide a § 327 retention.  Such was the case here.  The provision makes clear that its purview is focused primarily on the interests of the estate.  When professionals "hold or represent an interest *adverse to the estate*," they cannot be retained.  11 U.S.C. § 327(a) (emphasis added).  This focus is reiterated in § 327(a)'s second prong: professionals must be "disinterested"—most relevant, they cannot have an "interest materially *adverse to the interest of the estate.*"  *Id.* § 101(14)(c).[5]

---

[4] Also, in an analogous situation, violating those rules in soliciting creditors' committee members tainted a firm's eligibility for retention as committee counsel.  *See In re Universal Bldg. Prods.*, 486 B.R. 650, 658–61 (Bankr. D. Del. 2010).

[5] We also note that § 327(a) is written in the present tense: it bars the retention of professionals who "hold or represent" adverse interests.  It only allows disqualifications for adverse interests that exist at the time of retention.  *Accord In re AroChem Corp.*, 176 F.3d 610, 623 (2d Cir. 1999) ("[C]ounsel will be disqualified under section 327(a) only if it presently 'hold[s] or represent[s] an interest adverse to the estate,' notwithstanding any interests it may have held or represented in the past." (alterations in original)); *see also United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes.").  While any conflict

The relevant issue in our case is thus whether a possible conflict implicates the economic interests of the estate and might lessen its value. *See In re First Jersey Sec., Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) ("A Court may consider an interest adverse to the estate when counsel has 'a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant.'"); *accord In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 461 (5th Cir. 2012) (providing, *inter alia*, the same definition for "interest[s] adverse"); *In re AFI Holding, Inc.*, 530 F.3d 832, 845 (9th Cir. 2008) (same); *AroChem*, 176 F.3d at 623 (same); *In re Crivello*, 134 F.3d 831, 835 (7th Cir. 1998) (same); *In re Prince*, 40 F.3d 356, 361 (11th Cir. 1994) (same).

In this context, the conflict alleged by Century was outside the scope of § 327(a). The Bankruptcy Court explained it was "in no way convinced that Sidley generally cannot effectively represent BSA. This is not a situation where the [C]ourt is concerned that proposed counsel has a bias in favor of a non-debtor entity such as a parent or significant creditor." J.A. at 33. Century has not meaningfully challenged the Bankruptcy Court's factual finding that Sidley did not have an interest adverse to the estate. Century asserts that Sidley had a conflict because it was violating Rule 1.7 but does not explain why this violation, if it indeed occurred, impeded Sidley's

---

here has now ceased, Century argues that there was an actual, concurrent conflict that continued between at least Sidley's retention application on February 18, 2020, and when Sidley dropped Century as a client on February 20 or 24. But we do not need to explore this timing question because, as explained below, the putative conflict was outside the purview of § 327(a).

effective representation of BSA for purposes of § 327(a). This is unsurprising, as Haynes and Boone served as BSA's dedicated insurance counsel at all relevant times, and BSA was not a party to the reinsurance matters Sidley worked on for Century. Nor has Century explained why its positions in the reinsurance disputes are opposed to BSA's interests during its reorganization. On these facts, the Bankruptcy Court did not abuse its discretion in ruling there was no actual conflict under § 327.

Still, the Rules of Professional Conduct may be informative in some cases. For example, in *Congoleum*, 426 F.3d at 679, we held that Congoleum's counsel—Gilbert, Heinz & Randolph LLP—violated the Rules of Professional Conduct and § 327 for the same reason. But Century draws the wrong conclusion from that case. We never stated that violations of the Rules of Professional Conduct are themselves sufficient to create a § 327 conflict. Rather, we explained that the same facts showing Gilbert had violated its professional obligations under the Rules also meant it was not disinterested for purposes of § 327. *Congoleum*'s facts were markedly different than those before us: while Gilbert was representing Congoleum, it was also assisting claimants in settlement negotiations with that entity. That arrangement directly implicated its loyalty to Congoleum. Here, by contrast, Sidley represented Century in reinsurance matters in which BSA was not a party, and Sidley's representation of BSA excluded insurance issues.

Because Sidley's relationship to Century did not affect its ability to advocate on behalf of BSA, it was not an "actual conflict" under § 327 even if Century had legitimate concerns about Sidley's compliance with the applicable Rules of

15

Professional Conduct. Accordingly, the Bankruptcy Court reasonably ruled that Sidley's retention did not require disqualification under § 327.

## C. Rules of Professional Conduct

A court may use its inherent disciplinary power over the advocates appearing before it to disqualify an attorney. *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The conduct of attorneys practicing in federal court is governed by the local rules of the court. *See Congoleum*, 426 F.3d at 687. Local Rule 9010-1(f) for the United States Bankruptcy Court for the District of Delaware provides that "all attorneys admitted or authorized to practice before this Court . . . shall . . . be governed by the Model Rules of Professional Conduct of the American Bar Association, as may be amended from time to time."

As noted, Century asked the Bankruptcy Court to disqualify Sidley from representing BSA because (in Century's view) Sidley violated at least one of two Model Rules of Professional Conduct that regulate the attorney-client relationship: Rules 1.7 and 1.9. The first governs obligations to current clients and states that, unless certain listed exceptions apply, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Model Rules of Pro. Conduct r. 1.7 (Am. Bar. Ass'n 1983). This occurs when "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." *Id.* The second governs obligations to former clients. It states that, absent consent, "[a] lawyer who has

16

formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Model Rules of Pro. Conduct r. 1.9; *see also* Model Rules of Pro. Conduct r. 1.10 (Am. Bar Ass'n 1983) (extending the obligations of Rules 1.7 and 1.9 to all attorneys within the same firm).

Because the power to disqualify stems from a court's authority to supervise the attorneys appearing before it, a decision about whether to use that power is discretionary and "never is automatic." *Miller*, 624 F.2d at 1201. Even when an ethical conflict exists (or is assumed to exist), a court may conclude based on the facts before it that disqualification is not an appropriate remedy. Relevant factors depend on the specifics of the case, but generally include the ability of litigants to retain loyal counsel of their choice, the ability of attorneys to practice without undue restriction, preventing the use of disqualification as a litigation strategy, preserving the integrity of legal proceedings, and preventing unfair prejudice. *See Corn Derivatives*, 748 F.2d at 162; *see also TQ Delta, LLC v. 2Wire, Inc.*, No. 13-1835, 2016 WL 5402180, at *6 (D. Del. Sept. 26, 2016) (identifying these and other possible considerations). Sometimes disqualification is more disruptive than helpful even though an attorney may not have satisfied his or her professional obligations. And, indeed, courts in our Circuit often deny disqualification even when finding or assuming conflicts under the professional conduct rules. *See, e.g.*, *TQ Delta*, 2016 WL 5402180, at *6–7 (denying motion for disqualification despite violation of Rule 1.9); *Bos. Sci. Corp. v. Johnson & Johnson Inc.*, 647 F. Supp. 2d 369, 374 (D. Del. 2009) ("[Counsel's] violation of Model Rule 1.7 notwithstanding, the court concludes that disqualification is

17

not the appropriate remedy under the circumstances."); *Wyeth v. Abbott Lab'ys*, 692 F. Supp. 2d 453, 458–59 (D.N.J. 2010) (denying motion for disqualification even though there was "no dispute" that counsel violated Rule 1.7); *Elonex I.P. Holdings, Ltd. v. Apple Comput., Inc.*, 142 F. Supp. 2d 579, 583 (D. Del. 2001) (even were Rule 1.7 violated, disqualification would not have been warranted).

Here, the Bankruptcy Court followed this practice. Though it did not definitively decide whether Sidley had violated any professional responsibility rules, it determined that disqualification was inappropriate regardless. Century could not have been adversely affected, the Court found, because Sidley's bankruptcy team did not receive any confidential or privileged information from the attorneys working on Century's reinsurance matters. In contrast, BSA, the Bankruptcy Court also found, would have been adversely affected if the firm were disqualified.[6] These factual findings were well supported, and Century does not directly challenge them. *Cf.* Century's Op. Br. at 47–48 (arguing that Sidley must have been aware of privileged information from the reinsurance matters but not suggesting that any such information was passed to the team handling BSA's reorganization). Because Sidley's representation of BSA did not prejudice Century, but disqualifying it would have been a

---

[6] Because Sidley is no longer actively involved in the case, Century argues that disqualification would no longer prejudice BSA. But this is of no moment. We review the Bankruptcy Court's decision based on the record before it at the time of its decision. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (explaining that a factual finding is "clearly erroneous" only when implausible "in light of the record").

significant detriment to BSA, it was well within the Court's discretion to determine that the drastic remedy of disqualification was unnecessary.[7]

In the alternative, Century asks us to hold at least that courts should apply Rule of Professional Conduct 1.7 in cases (including, according to Century, this one) where a law firm dropped an existing client to avoid conflicts that would prevent it from taking on a more lucrative client. Under this concept—known as the "hot potato" doctrine—courts apply the more stringent Rule 1.7 standards even though representation has formally ended to discourage firms from dropping a client (like a hot potato) for self-interested reasons. *See, e.g.*, *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 209 (S.D.N.Y. 2009). There are not enough facts to put that principle into play in our case. Accordingly, we save consideration of it for the future.

\* \* \* \* \*

In holding that the Bankruptcy Court permissibly allowed BSA to retain Sidley as its restructuring counsel, our concern is primarily whether it could effectively represent BSA in its bankruptcy case. Whether it did so in Century's

---

[7] Century now requests other remedies (*e.g.*, disgorgement of fees) as alternatives to disqualification. But it argued only for disqualification before the Bankruptcy Court, and so it has forfeited any request for other remedies. *See In re Handel*, 570 F.3d 140, 143 (3d Cir. 2009). Moreover, it is within the Bankruptcy Court's discretion to weigh the same considerations when imposing alternative remedies in lieu of disqualification as when imposing disqualification itself.

reinsurance matters is a separate question that Century can independently challenge in its arbitration proceeding with Sidley. But as to the issue before us, § 327 is the test the Bankruptcy Code requires. Though a court's decision on retention may be informed by counsel's conduct implicating the Rules of Professional Conduct, the facts before us do not require that this be done. The Bankruptcy Court properly focused on § 327 and took Century's concerns seriously. It also did not hastily jump to a conclusion; it looked carefully at the specific facts before it and reasonably approved BSA's retention of Sidley. This is nowhere close to an abuse of discretion. We thus affirm the approval of its judgment by the District Court.