PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2092
_____

CINDY ADAM, individually and on behalf of all others
similarly situated,
Appellant

v.

FRANK V. BARONE; KIRILL CHUMENKO; GREEN
POGO LLC (Delaware);
GREEN POGO LLC (New Jersey); NATURAL
BEAUTY LINE LLC; VEGAN BEAUTY LLC;
IMPROVED NUTRACEUTICALS LLC; FORTERA
NUTRA SOLUTIONS LLC; ADVANCED BEAUTY
LLC
_____

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 3-20-cv-10321
District Judge: Honorable Michael A. Shipp
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 2, 2022

Before: MCKEE, AMBRO, and SMITH, *Circuit Judges*

(Opinion Filed:  July 19, 2022)


Alexander C. Covey
Kneupper & Covey
4475 Peachtree Lakes Drive
Berkeley Lake, GA 30096

Bruce D. Greenberg
Lite DePalma Greenberg & Afanador
570 Broad Street
Suite 1201
Newark, NJ 07102
        *Counsel for Appellant*

Joshua S. Bauchner
Anthony J. D'Artiglio
Ansell Grimm & Aaron
365 Rifle Camp Road
Woodland Park, NJ 07424
        *Counsel for Appellees*

_____

OPINION OF THE COURT
_____
2

SMITH, *Circuit Judge*.

Cindy Adam was charged nearly $100 for what she believed were free samples of beauty products. After complaining about the charge, she was offered the chance to return the items so that she might obtain a refund. Adam refused and eventually filed this lawsuit. The United States District Court for the District of New Jersey dismissed her complaint, concluding that she lacked standing because she refused Defendants' offer of a refund in the ordinary course of business. We disagree. We will thus reverse the District Court's order and remand with instructions.

## I. Facts[1] & Procedural History

[1] This appeal comes to us from Defendants' motion to dismiss, so we look only to the facts alleged in the operative complaint and accept them as true. *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 90 (3d Cir. 2011) ("[B]ecause standing was decided at the motion to dismiss stage, the District Court properly limited itself to the pleadings contained in the Complaint and the agreements cited therein."); *Siemens USA Holdings, Inc. v. Geisenberger*, 17 F.4th 393, 412 n.25 (3d Cir. 2021) ("Where, as here, the defendants move to dismiss a complaint under Rule 12(b)(1) for failure to allege subject matter jurisdiction, we treat the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." (quoting *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 538 (3d Cir. 2017))).

3

In August 2017, Adam came across an advertisement for free samples of "Nuvega Lash" beauty products. The advertisement implied that she need only pay shipping and handling. So Adam ordered two free samples and purchased a third item. She was consequently charged: $4.99 for the first sample's shipping; $4.95 for the second sample's shipping; and $14.99 for the purchased item. Adam does not take issue with any of these charges; she expected all of them.

Soon thereafter, Adam was unexpectedly charged $94.97. That charge was reversed, but on that same day, Adam was also charged $92.94. That unexpected charge resulted in an overdraft of her checking account, leading to a $34.00 bank fee. It was only her entitlement to an annual overdraft-forgiveness opportunity that allowed her to avoid paying the fee. But the $92.94 charge remained.

Adam called the company that marketed and sent her Nuvega Lash products, allegedly Defendant Fortera Nutra Solutions LLC. The customer service representative told Adam during that phone call that "she had agreed at the time of purchase to pay the full amount that she had been charged if she kept the 'free samples.'" First Amended Complaint, App'x at A30 ¶ 54. Adam responded that she did not agree—and would not have agreed—to such an arrangement. She asked to speak to a manager during the phone call, but one was never made available to her. The representative told Adam that she would need to return the items before any refunds could

4

be issued.  But Adam, not trusting the company that she believed was trying to scam her out of nearly $100, refused to return the items.

In the midst of this, Adam called her bank and contested the $92.94 charge as fraudulent.  Her bank temporarily reversed the charge but ultimately reinstated it, concluding that it was legitimate.  Adam contends that her bank was misled by Defendants' "false-front scheme"[2] and that the charge would have been reversed but for their misrepresentations.

Adam then filed a putative class-action suit in the United States District Court for the Northern District of California, which transferred the case to the District of New Jersey on Defendants' motion.  The operative complaint, filed in May 2020, alleges violations of (or conspiracy to violate or aiding and abetting violation of): multiple California laws; the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693–1693r; the RICO Act, 18 U.S.C. §§ 1961–1968; and various consumer protection laws, all on behalf of a nationwide class.  In October 2020, Defendants moved to dismiss Adam's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) & (6).  The District Court concluded the action was non-justiciable

---

[2] False-front schemes involve maintaining and showing banks a legitimate website that conspicuously displays important terms and conditions but funneling customers through webpages that do not include such terms and conditions.

5

and granted Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). This timely appeal followed.

## II. Jurisdiction

The District Court had subject-matter jurisdiction over Adam's claims through 28 U.S.C. §§ 1331 & 1367. Alternatively, the District Court had jurisdiction pursuant to 28 U.S.C. § 1332(d). We have subject-matter jurisdiction under 28 U.S.C. § 1291.

## III.   Standing

"The Constitution gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.' That power includes the requirement that litigants have standing. A plaintiff has standing only if [s]he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (citations omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). So if a plaintiff does not have standing, courts "lack authority under Article III of the Constitution to consider the merits" of any claim. *In re Boy Scouts of Am.*, 35 F.4th 149, 156 (3d Cir. 2022).

The District Court relied on *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013), to conclude that Defendants' refund offer—even though it was rejected—

6

mooted Adam's claim and left the court without authority to consider it. A mootness conclusion implies there was once standing, but that some event or developments occurring after litigation commenced deprived the plaintiff of that standing. *See Boy Scouts*, 35 F.4th at 156 ("When the requirements necessary for standing at the start of a case disappear, it becomes moot and no longer satisfies Article III's case-or-controversy requirement[.]"); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) ("If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."). Here, the refund offer was made *before* Adam filed her lawsuit, so the relevant inquiry is whether Adam had standing at the time she brought her claim. *See California v. Texas*, 141 S. Ct. at 2113. We therefore treat the District Court's conclusion that the refund offer mooted Adam's claim as a conclusion that Adam lacked standing at the time she brought her claim.

With that in mind, the familiar inquiry into Adam's standing shows she had a basis for initiating her lawsuit. "To establish Article III standing, a plaintiff must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Mielo v. Steak 'n Shake Ops., Inc.*, 897 F.3d 467, 478 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). In this analysis, we are limited to "a

7

screening for mere frivolity"—"we must carefully 'separate our standing inquiry from any assessment of the merits of the plaintiff's claim.'" *Id.* at 478–79 (quoting *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017)). The District Court did not explicitly conduct such a screening, but Adam's complaint satisfies all three standing elements.

First, we consider whether Adam alleged an injury in fact. This requires a showing that she suffered an invasion of a legally protected interest, that the harm is concrete and particularized to her, and that she actually suffered or is imminently going to suffer that harm. *Mielo*, 897 F.3d at 478 (quoting *Spokeo*, 578 U.S. at 338). Adam has alleged that she suffered financial harm of nearly $100. "[F]inancial harm is a 'classic' and 'paradigmatic form' of injury in fact," and an allegation of financial harm almost always satisfies these requirements. *Cottrell*, 874 F.3d at 163 (brackets omitted) (quoting *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 & 293 (3d Cir. 2005)). "Indeed, we have explained that where a plaintiff alleges financial harm, standing 'is often assumed without discussion.'" *Id.* But the District Court, relying on *Hayes*, appears to have concluded that Adam was not injured.

In *Hayes*, a plaintiff purchased an as-is television from Sam's Club and a warranty to cover it. 725 F.3d at 352–53. But Sam's Club excluded as-is items from warranty protection. *Id.* at 353. So when Hayes showed up seeking a replacement remote control for his as-is

8

television under the warranty, Sam's Club offered him a refund of the warranty's cost. *Id.* Hayes refused that offer, and Sam's Club then gave him the new remote he sought. *Id.* The end result was a conclusion that Hayes "suffered no injury arising from his television warranty purchase," and that he thus lacked standing to pursue his claim. *Hayes v. Wal-Mart Stores Inc.* (*Hayes II*), Civ. No. 10-460, 2014 WL 654542, at *3 (D.N.J. Feb. 20, 2014) (discussing the result of *Hayes*). The District Court relied on this conclusion, applying it to the present case and deciding that it lacked jurisdiction to hear Adam's claim because Defendants' refund offer meant Adam suffered no injury. Dist. Ct. Op., App'x at A8 (brackets omitted) (quoting *Hayes II*, 2014 WL 654542, at *3); *id.* at A11. But the District Court erred in its application of *Hayes*.

In that case, "[w]e agree[d] with the trial court that Hayes' purchase of a Service Plan for his television set [could not] form the basis for class certification *because it was honored when Sam's Club replaced the missing remote*. Sam's Club also offered to refund Hayes the cost of the Service Plan, but Hayes refused to accept the refund." 725 F.3d at 361 n.10 (emphasis added). The reason Hayes was no longer injured was because he accepted Sam's Club's actions in compliance with the Service Plan and was made whole, not because Sam's Club alternatively offered to refund him the cost of the Service Plan. We thus did not hold that "a refund offer [] made in the ordinary course of business" would

9

categorically deprive a plaintiff of her day in court. *Cf.* Dist. Ct. Op., App'x at A11.

Here, Adam has not been made whole; she has neither received a refund nor accepted any alternative to a refund.[3] Defendants merely offered what they believed would make Adam whole, and "[a]s every first-year law student learns, the recipient's rejection of an offer 'leaves the matter as if no offer had ever been made.'" *Campbell-Ewald*, 577 U.S. at 162 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 81 (Kagan, J., dissenting)).[4] So unlike in *Hayes*, Adam's allegations do

---

[3] Of course, in *Hayes*, the plaintiff did not merely accept an alternative to a refund. He received *exactly what he was entitled to*—a new television remote control as promised by the warranty he purchased. 725 F.3d at 353. Even had Hayes not accepted the new remote, the warranty context may be distinguishable from the case before us: whether someone is injured when they refuse the other party's performance under a contract may be a wholly different question than whether somebody remains injured after being offered, but refusing, compensation for alleged wrongdoing. But we need not decide this because Hayes *did* accept performance of the warranty obligation and thus was not injured. *Id.*

[4] Adam insists that *Campbell-Ewald* governs this case. While we acknowledge the observations made by the Supreme Court regarding the basic principles of contract law, we need not rely on *Campbell-Ewald* to reach our conclusion. Because we independently hold that Adam has standing to pursue her claims, we decline to, in this case, extend *Campbell-Ewald*

10

establish that she has actually suffered the concrete and particularized harm of having nearly $100 taken from her. Consequently, Adam has alleged an injury in fact sufficient to satisfy the first element of standing.

Second, we consider whether that financial harm is "fairly traceable to" Defendants' conduct. *Mielo*, 897 F.3d at 480–81 (quoting *Spokeo*, 578 U.S. at 338). This is akin to but-for causation, not proximate causation.[5] *Id.* at 481 (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193–94 (3d Cir. 2016)); *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009). Defendants appear to argue that Adam failed to meet even that low threshold because she was the cause of her own injury, *i.e.*, that she "elected to keep the products" and thus prevented Defendants from giving her a refund so that the only reason Adam is out $92.94 is because she chose not to take the steps required to get a refund. This argument, of

_____

from strategic attempts to moot a pending case with a Rule 68 settlement offer to ordinary-course-of-business offers to make things right before the specter of litigation arises.

[5] But-for causation is established whenever an injury would not have occurred without the alleged action or event. *Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013). Proximate causation, on the other hand, is only established when the injury is sufficiently related to the action or event that the law deems the injury to have been caused by the action or event. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132–34 (2014).

11

course, assumes that the Defendants were entitled to the return of the products, which flies in the face of the complaint's allegations and so is a faulty premise. Adam cannot be faulted for standing on the right to freely keep what was represented to be a free sample. But accepting as true that Adam was not entitled to keep the products and that she would not have suffered the $92.94 injury if she had returned the items,[6] Defendants would be correct that Adam's actions were a but-for cause of her injury. But "[t]here may be more than one but for cause of a loss." *Loughman v. Consol-Pa. Coal Co.*, 6 F.3d 88, 94 (3d Cir. 1993). So Defendants' conduct could nevertheless still provide but-for causation for Adam's financial harm.

That financial harm was allegedly a result of Defendants' actions in misleading her, charging her, and lying to her bank about the genuineness of the charge. In other words, Adam alleges that, but for Defendants' actions, there would be no injury: she would not have been injured if the products were not advertised in a deceptive manner; she would not have been injured if she had not

---

[6] Adam argues that she would not have received the refund even if she had returned the items. Defendants argue that *Clapper v. Amnesty Int'l*, 568 U.S. 398, 416 (2013), precludes her from manufacturing standing by speculating that Defendants would not honor their word. Because Adam satisfies the causation element regardless of whether her concerns about receiving a refund were sufficiently nonspeculative, we need not resolve that dispute.

12

been billed $92.94 without authorization; and she would not have been injured if her bank was not lied to during the course of its fraud investigation. Accordingly, even if Adam's actions were themselves a but-for cause of her financial harm, the alleged actions of Defendants were as well. While Adam will have to do more to establish causation at the merits stage, her allegations satisfy the traceability requirement of standing. *Mielo*, 897 F.3d at 481.

Third, and finally, we consider whether Adam's injury "is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo*, 578 U.S. at 338). As noted above, when a plaintiff alleges financial harm, as Adam did here, we often assume standing without discussion. *Cottrell*, 874 F.3d at 163 (brackets omitted). We can do this because courts routinely provide redress for financial harms. The District Court could provide redress for Adam's financial harm by, for example, ordering Defendants to pay restitution, as requested in the complaint. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (noting petitioners would satisfy redressability by seeking "one dollar in compensation" for their injury).

So Adam has shown all three elements of standing by alleging that Defendants' actions caused her a financial harm of $92.94. Having done so, she has established that resolving the present action is within the federal courts' constitutional authority to adjudicate cases and controversies. And because the parties identify no

13

intervening circumstance arising after the lawsuit was filed that would deprive Adam of a "personal stake in the outcome of the lawsuit," the claim should not have been dismissed as moot. *See Campbell-Ewald*, 577 U.S. at 160–61 (quoting *Genesis Healthcare*, 569 U.S. at 72); *Boy Scouts*, 35 F.4th at 156. The District Court thus erred in dismissing her claims.[7]

## IV. Conclusion

Cindy Adam had standing to bring her claims regardless of Defendants' unaccepted offer to provide a refund before litigation commenced. Accordingly, the District Court's May 31, 2021, order will be reversed and the matter remanded for further proceedings consistent with this opinion.

---

[7] Because Adam has standing on account of the $92.94 debited from her account, we need not consider whether the loss of Adam's overdraft-forgiveness opportunity, any cost of shipping the items back to the vendor, the lost time-value of money, or anything else provides Adam with standing.